UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-1857(DSD/SRN)

Mesaba Aviation, Inc.,

       Plaintiff,

v.

Aircraft Mechanics Fraternal
Association; AMFA Local Unions
5, 33 and 38; and O.V.
Delle-Femine, Nathan Winch,
Neil White and James Schafer
in their individual and AMFA
Representative Capacities,

       Defendant.

    Timothy R. Thornton, Esq., Matthew D. Forsgren, Esq. and
    Briggs and Morgan, P.A., 2200 IDS Center, 80 South Eighth
    Street, Minneapolis, MN 55402 and Kenneth B. Hipp, Esq.
    and Marr, Hipp, Jones and Wang, 1001 Bishop Street, 1550
    Pauahi Tower, Honolulu, HI 96813, counsel for plaintiff.

    Karen L. Dingle, Esq., Stanley J. Silverstone, Esq. and
    Seham, Seham, Meltz & Petersen, LLP, 3050 Metro Drive,
    Suite 216, Minneapolis, MN 55425, counsel for defendant
    AMFA.

This matter came on for hearing on August 19, 2005, upon plaintiff's motion for a temporary restraining order and preliminary injunction. Plaintiff Mesaba Aviation, Inc., ("Mesaba") and defendant Aircraft Mechanics Fraternal Association ("AMFA") appeared through their respective counsel.[1] Based upon

---

[1] Counsel for defendant AMFA represents that the AMFA Locals and individual union officials named in the complaint have not been
(continued...)

the file, record and proceedings herein, and the arguments of counsel at the hearing, the court grants plaintiff's motion.

**BACKGROUND**

Mesaba is a "carrier" within the meaning of the Railway Labor Act ("RLA"), 45 U.S.C. § 181. Mesaba provides scheduled commercial air service to 118 cities throughout the United States and Canada. AMFA is the certified collective bargaining representative for Mesaba's mechanics and related employees. AMFA Locals 5, 33 and 38 are subordinate units of AMFA. The individual defendants are all officers of AMFA or its locals.

The relationship between Mesaba and its AMFA mechanics is governed by a collective bargaining agreement ("CBA"). The CBA includes a "no-strike" clause that provides as follows:

> During the term of this Agreement, the Company will not lock out any employee covered hereby, and neither the Association nor any employee covered by this Agreement will authorize or take part in any primary or secondary slow down, sit down, work stoppage, strike or picketing of Company premises, until the procedures of the RLA, as amended, have been exhausted, as it relates to this agreement.

(CBA ¶ 2.D.) At the time this order issues, AMFA mechanics are less than seven hours away from a probable strike against Northwest Airlines. However, the prospect of such a strike has been

---

[1](...continued)
served with this lawsuit. Perhaps as a consequence, they were not represented at the hearing.

anticipated by the parties for some time. On July 21 and again on July 27, 2005, Mesaba and AMFA representatives engaged in conference calls to discuss the impact of a Northwest Airlines strike on Mesaba operations. The parties dispute the exact contents of the conversations. Mesaba, however, came away from them with the impression that Mesaba-AMFA mechanics likely would strike in sympathy with the Northwest Airlines-AMFA mechanics.

On August 9, 2005, Mesaba filed a grievance charging that AMFA had repudiated the "no-strike" clause by "stating that AMFA mechanics would not cross through a picket line to get to work." (Poerstel Aff. Ex. C.) On August 12, 2005, AMFA issued a press release announcing, among other things, that "all airlines represented by the union unanimously passed a resolution 'to implement whatever form of action necessary' to support Northwest Airlines members in the likely event of a strike beginning August 20." (Poerstel Aff. Ex. E.) On August 15, 2005, AMFA answered Mesaba's grievance. (Poerstel Aff. Ex. F.) AMFA asserted that the "no-strike" clause "has no application to situations where AMFA-represented Mesaba employees are faced with a lawful picket line manned by the employees of another airline." (Id. Ex. F at 1.)

The day after receiving AMFA's response, Mesaba submitted its grievance to the Mesaba/AMFA System Board of Adjustment. The dispute is now set to be arbitrated on August 25, 2005. Mesaba commenced this civil action on August 17, 2005. It now moves for

3

injunctive relief to preserve the status quo pending arbitration of the parties' dispute.

**DISCUSSION**

Despite the evident contention between Mesaba and AMFA, there are three key matters on which they agree. First, they agree that the current CBA addresses the right of either Mesaba or AMFA to engage in economic self-help. Second, as a necessary result of the first, Mesaba and AMFA agree that their disagreement over the meaning of the CBA's "no-strike" provision is a minor dispute within the meaning of the RLA. Third, as a necessary result of the second, the parties agree that their dispute cannot be heard in this court, but rather must be resolved through the arbitration procedures prescribed in the Act. These points of agreement narrow considerably the court's analysis in the matter at hand. What remains is (1) whether the court has jurisdiction to enjoin pre-arbitration economic self-help and, if so, (2) whether the particular requirements for such injunctive relief have been met in this case.

The first question has been answered before. Where the traditional standards for preliminary relief have been met, the district court has jurisdiction to enjoin a strike and maintain the status quo pending arbitration of a minor dispute over the scope of a "no-strike" clause. See Long Island R.R. Co. v. Int'l Assoc. of

4

Machinists, 874 F.2d 901, 908 (2d Cir. 1989); Northwest Airlines, Inc. v. Int'l Assoc. of Machinists & Aerospace Workers, 712 F. Supp. 732, 738 (D. Minn. 1989) (citing Trans Int'l Airlines, Inc. v. Int'l Bhd. of Teamsters, 650 F.2d 949, 966 (9th Cir. 1980)); see also Northwest Airlines, Inc. v. Air Line Pilots Assoc. Int'l, 442 F.2d 246, 249 (8th Cir. 1970) (per curiam).  Such jurisdiction helps to preserve the RLA's policy of "avoid[ing] interruption to commerce by the transportation industries." Long Island R.R., 874 F.2d at 907 (citing Bhd. of R.R. Trainmen v. Chicago River & Indiana R.R. Co., 353 U.S. 30, 36 (1957)).

The second question requires analysis of the present circumstances.  The prerequisites for an injunction in a labor dispute under the Norris-LaGuardia Act run parallel to the traditional requirements for injunctive relief. Compare 29 U.S.C. § 107, with Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109 (8th Cir. 1981) (setting forth traditional four-factor test).  The Norris-LaGuardia Act provides that:

> No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute ... except after findings of fact by the court, to the effect --
> (a) That unlawful acts have been threatened and will be committed unless restrained ...
> (b) That substantial and irreparable injury to the complainant's property will follow;
> (c) That as to each item of relief granted greater injury will be inflicted upon

>       complainant by the denial of relief than will
>       be inflicted upon defendants by the granting
>       of relief;
>       (d) That complainant has no adequate remedy at
>       law; and
>       (e) That the public officers charged with the
>       duty to protect complainant's property are
>       unable or unwilling to furnish adequate
>       protection.

29 U.S.C. § 107.  The four <u>Dataphase</u> factors are: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury the injunction will cause to other parties in the case; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  <u>See</u> 640 F.2d at 113.  The <u>Dataphase</u> test subsumes criteria (a) through (c) of the Norris-LaGuardia Act.  <u>See</u> <u>Northwest Airlines</u>, 712 F. Supp. at 738.  The court finds that the remaining Norris-LaGuardia criteria are satisfied.  Mesaba has submitted its grievance to the System Board of Adjustment, and it has no other legal remedies under the RLA.[2]

---

[2] In a related vein, AMFA argues that Mesaba should be barred from seeking injunctive relief under section 8 of the Norris-LaGuardia Act.  Section 8 bars injunctive relief in favor of "any complainant ... who has failed to make every reasonable effort to settle [a] dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."  29 U.S.C. § 108.  AMFA contends that Mesaba should have grieved AMFA's interpretation of the "no-strike" clause immediately after the parties' July 21, 2005, conference call.  That argument is undermined by AMFA representative Neil White's sworn declaration that, at the time of the call, AMFA's representatives "reiterated that their intention was 100% to be at work" in the event of a Northwest Airlines strike.  Obviously, if AMFA told Mesaba on July 21 that its mechanics intended to go to work, Mesaba would then have had little reason to raise a grievance.  Accordingly, the court finds that Mesaba's delay in
(continued...)

See id. at 738. Furthermore, no public officers are able to adequately protect Mesaba's interests.

Mesaba has also carried its burden as to the Dataphase factors. If the Mesaba-AMFA mechanics honor Northwest-AMFA's picket lines or otherwise engage in secondary strike activity, it will likely cripple Mesaba's operations and cause it irreparable harm. (Poerstel Aff. ¶ 14.) By comparison, defendants' harm will be slight. As was true in Northwest Airlines, the temporary restraining order will "require the defendants to maintain the status quo and to comply with the RLA's mandatory dispute resolution procedures." 712 F. Supp. at 739. The order will injure AMFA "only in the sense that the effectiveness of its strike against [Northwest] may be diminished." Id. at 739. Northwest-AMFA employees, of course, remain free to conduct whatever lawful secondary activity they wish.

It would be inappropriate for the court to express a definite opinion on the merits of the parties' dispute over the meaning of the "no-strike" clause. The court must note, however, that Mesaba's position is plausible and has a reasonable chance of success, particularly in view of the explicit reference to secondary activity in the "no-strike" clause. (CBA ¶ 2.D.) Finally, although strikes advance important public interests, those

---

²(...continued)
seeking arbitration was reasonable.

interests are outweighed in this case by the "[m]aintenance of a reliable air transportation system" that is "essential to the flow of commerce." Northwest Airlines, 712 F. Supp. at 739. The effects of a disruption in Mesaba's operations would be felt in thirty-three states and three Canadian provinces. Twenty-one cities and towns, where Mesaba is the lone scheduled airline, stand to lose all commercial air service. Thus the public interest favors issuance of the order. Balancing all the factors together, the court concludes that Mesaba's motion should be granted.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion [Doc. No. 2] is granted.

2. Defendants, their officers, agents, members and employees, and all persons acting in concert or participation with them, in any manner or by any means, are prohibited from directing, calling, causing, authorizing, inducing, instigating, conducting, continuing, encouraging, engaging, or taking part in any primary or secondary slow down, sit down, work stoppage (including refusal to cross picket lines whether established by striking employees of Northwest Airlines or of others), strike or picketing of Mesaba's premises, until the procedures of the RLA have been exhausted as it relates to the CBA. This order shall not be construed to prohibit lawful primary or secondary strike activity by persons other than Mesaba-AMFA employees bound by the CBA.

3. Defendants shall immediately issue such notices, and take

such further steps as shall be necessary and appropriate to carry into effect the substance and intent of this injunctive relief, including but not limited to, the requirement that defendants (1) publicly withdraw and rescind AMFA's repudiation of Article 2.D and rescind any orders, directions, requests or suggestions to Mesaba's mechanics to do any act that has been enjoined, (2) affirmatively direct and advise Mesaba's mechanics by written notice to refrain from doing any act that has been enjoined, such notice to be hand delivered with signed receipt to each Mesaba mechanic within a time to be determined by the court and to be posted on electronic and physical bulletin boards and at such other places as are appropriate to advise the mechanics, and (3) initiate disciplinary proceedings against any Mesaba mechanic who violates the aforesaid directive.

   4.   Plaintiff shall take reasonable and appropriate measures to protect the physical safety of Mesaba-AMFA mechanics during their arrival at and departure from their places of work. Plaintiff shall bear the expense of these measures.

   5.   Plaintiff shall execute a bond in the amount of $1,000.

6.  The parties shall report back to the court on their compliance with this injunctive relief on or before 5:00 p.m., Monday, August 22, 2005.

Dated:  August 19, 2005
Filed at 5:00 p.m.

s/David S. Doty
David S. Doty, Judge
United States District Court